*510 OPINION OF THE COURT
J. George Follett, J.
In this case the St. Lawrence County Department of Social Services seeks support from the father of a child who was placed by the department in a family foster home. The father contends that he should not be obligated to pay support for a child who was placed in foster care without his consent because she refuses to abide by reasonable rules and restrictions of the family and chooses to live elsewhere. He further contends that the child is immediately welcomed back in his home where he would support her providing she conforms to family rules of behavior.
The facts of this case as established by the credible evidence are as follows. Linda, the subject of this proceeding, became 16 on August 5, 1976. There are two older girls in the family, one at home in high school and the other away from home, married. There is one younger brother, age 10. For some years before the fall of 1976, Linda presented minor discipline problems to her parents. Shortly after her sixteenth birthday, she announced that there was a "law” which allowed her as a 16 year old to make all decisions for herself, to abide by family rules or ignore them as she chose, to come and go as she pleased and that there was nothing that the parents could do about it. In response, she was told by her parents that as long as she lived in the house, she must abide by the family rules.
There then started a series of confrontations between the child and both her parents. She started fights with siblings, used grossly profaned and abusive language toward members of her family, particularly her father, repeatedly challenged her parents discipline and commenced missing school. The result of this conduct were frequent verbal interchanges between parent and child and occasional physical exchanges between Linda and her father when her father became exasperated to the point of losing his temper. The family was in a state of continual agitation from September, 1976 on. The father, who is prone to alcohol abuse began drinking to excess which further aggravated the family situation.
The problems culminated in an incident in February of 1977 when the girl, coming in from the cold, refused to close the front door. She swore at her father when he asked her to close the door and then, when he went to close it, she took his chair where he had been sitting watching television. He pulled her *511 out of the chair whereupon she attacked him with her fists and hit him in the groin with her knee. At this, he slapped her beside the head knocking her across the room and told her that if she could not abide by the family rules, she should leave. She left the house and has not returned.
She initially stayed with an aunt. Then she was referred to the Child Welfare Division of the St. Lawrence County Department of Social Services which resulted in her being placed in a foster home. Both while with her aunt and in foster care, her conduct, school attendance and school effort have been exemplary.
During the early stages of the acting out behavior on the part of this young woman, the parents sought guidance from the school psychologist who referred them to family services intake in the Probation Department. After two visits to that agency, they decided not to return for further counseling on more appropriate means of discipline. Following the placement of the child in foster care, a department social worker met several times with the parents. The father initially agreed to consider counseling and parenting classes but then, after learning that some contribution toward the cost of the child’s care in foster placement would be requested, refused all further co-operation. The Department of Social Services then commenced this proceeding.
As is so often required in Family Court, we are now confronted with the necessity of imposing a legal solution to a problem which should have been resolved by community social agencies. It is tragic that casework and, if necessary, mental health counseling, did not have an opportunity to resolve the personal and family problems here presented before attitudes became entrenced by this suit for support. No one can quarrel with the need to protect the public coffers. However, here any recoupment allowed will constitute only a small portion of the cost of maintaining this child in foster care. Furthermore, the possible future cost to the community of the father’s drinking problem and of the parents inability to deal effectively with adolescent behavior cannot yet be measured. No court decisions will resolve these difficulties.
The guidelines for a legal solution are found in the relevant statutes and case law. Section 398 of the Social Services Law authorizes the Commissioner of Public Welfare of this county to receive a child into his care and place the child in a suitable foster home. Clearly, considering the degree of con *512 flict which existed between parents and child in this case, the commissioner was authorized to accept the care of the child and place her in a foster home. Her maladaptive behavior continued to deteriorate both at home and at school and required special treatment and placement.
Sections 101, 102, 111-c and 398 of the Social Services Law, as well as section 415 of the Family Court Act authorize the commissioner to proceed against the parent to obtain contribution for the cost of maintaining the child in foster care. However, the Court of Appeals has held that the support obligation changes where "a minor of employable age and in full possession of her faculties, voluntarily and without cause, abandons the parent’s home, against the will of the parent and for the purpose of avoiding parental control”. (Matter of Roe v Doe, 29 NY2d 188, 192.) Furthermore, it has been held that under such circumstances, it is not material that the proceeding was initiated by a public welfare official instead of the parent because "the statutory duty of support is identical whether that responsibility is established under section 413 or section 415 of the Family Court Act”. (Matter of Parker v Stage, 55 AD2d 662, 663.) Following these principles, it would seem that the father should be relieved of his duty to support. It should be noted that this is not exclusively an emancipation case as was addressed in Matter of Bickford v Bickford (55 AD2d 719) or a case where the child left home with the "acquiescence of, if not the encouragement of’ her parents, as in Matter of Darene H. v Patricia S. (90 Misc 2d 558, 560). Here the only fair conclusion to be drawn from the evidence is that she left voluntarily without good cause in order to avoid parental discipline.
However, the child is now just past 17 and a full-time high school student. She is not of "employable age”, a distinction twice made by the Court of Appeals in Matter of Roe v Doe (29 NY2d 188, 192, 193, supra). There the daughter was 20 years old. In Matter of Parker v Stage (supra), the daughter was well past 18 at the time of the commencement of the proceedings to compel support.
The concept that the parents’ obligation to support a child flouting parental authority continues up to an age where a child should be expected to function independently in the world finds support in the provisions of sections 234 and 235 of the Family Court Act authorizing a proceeding to compel a parent to support a child detained, placed or committed by *513 Family Court order to an authorized institution. In Matter of Jesmer v Dundon (29 NY2d 5) the Court of Appeals specifically noted the distinctions which must be drawn concerning parental support liability when dealing with behavioral problem children who have not yet reached the age of independent responsibility.
Nor should the discretion which the law gives to the court (Matter of Bickford v Bickford, 55 AD2d 719, supra; Matter of Sevrie v Sevrie, 90 Misc 2d 321) be exercised at this time in this case. The parents have incurred no expense nor have they expended any resources in an effort to resolve the problems which prevent the return of the child to their home. The mental health clinic made specific suggestions designed to achieve that end as set forth in a report dated April 15, 1977 filed in the Family Court folder. Pursuit of these suggestions would have undoubtedly caused the family expense in attending counseling sessions and possibly some hardship depending on the severity of Mr. Bylow’s drinking problem.
This court would still be disposed to exercise its discretion in fixing the amount of support if any such effort were made and expenses incurred. In the meantime, the amount requested by the petitioner, $120 per month, is within the means of the father according to his financial statement filed with the court. An order is entered accordingly for weekly payments.