536 So.2d 311 (1988)
Mr. and Mrs. James DUPES, Appellants,
v.
STATE of Florida, DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, Appellee.
No. BR-426.
District Court of Appeal of Florida, First District.
December 19, 1988.
Rehearing Denied January 31, 1989.
*312 David M. Douglas, Jacksonville, for appellants.
John R. Perry, Asst. Dist. Legal Counsel, HRS District 2, Tallahassee, for appellee.
SMITH, Chief Judge.
Appellants, Mr. and Mrs. James Dupes, seek review of a final order entered by appellee, Department of Health and Rehabilitative Services (HRS), directing them to pay $2,002.60 for the cost of maintaining their minor child while incarcerated as a juvenile delinquent. We reverse and remand for further proceedings.
The issues, as framed by appellants, would have this court determine: the constitutional validity of section 402.33, Florida Statutes (1985); the validity of the rule establishing the fee collection system employed by HRS (Rule 10-6.010, et seq., Florida Administrative Code); and whether section 39.11, Florida Statutes, containing special provisions dealing with support and maintenance fees for juveniles, preempts the more general provisions for support and maintenance found in section 402.33. We find that the statute, section 402.33, is facially constitutional and that its operation and effect is not preempted by section 39.11. We agree with appellants, however, that section 402.33 may have been unconstitutionally applied by the department in its assessment of fees against appellants. We further find that because of procedural deficiencies resulting in the absence of a proceeding below, and a record and order adequately addressing the facts and issues presented by this controversy, the remaining questions on appeal are not ripe for review.
The facts leading to this appeal are that on April 15, 1986, while on a runaway status, appellants' son burglarized their home. Shortly thereafter he was adjudicated a delinquent child and committed to the custody of HRS. On May 30, 1986, he was placed in the Arthur G. Dozier School in Marianna, Florida, where he remained until his transfer to the Marine Institute in Jacksonville, Florida, on July 30, 1986.
After receiving financial information from appellants, pursuant to provisions of its applicable rule, HRS sought reimbursement for the cost of maintaining appellants' son at the Dozier School under the provisions of section 402.33. According to HRS, the cost of maintaining appellants' son in the Dozier School amounted to $1,497.00 per month. Using its "sliding fee schedule," which takes into account the size of appellants' family (three members) and their combined gross monthly income of $4,616.00, HRS determined that the amount of the monthly fee to be assessed against appellants for services to their son would be 21% of the parents' gross income, or $969.00 per month. Nothing in the rule or other information in the record discloses how the 21% figure was arrived at.
Upon receipt of appellants' request for a fee waiver, HRS informed appellants, pursuant to its rule, that their request for a fee waiver would be submitted to a review *313 committee for a recommendation to the district administrator for HRS, who alone had the authority to approve their request. Appellants were also advised of the time and date when the review committee would meet at the Dozier School, and were told they could attend this meeting. On July 28, 1986, HRS informed appellants that their request for a fee waiver had been denied by the review committee, and that if they disagreed with the agency's decision not to waive the fee, they could "request that [the] problem be heard by an administrative hearing officer." No mention was made in this notice, however, of a time limitation on the request for such a hearing.
On September 1, 1986, appellants received a letter advising that they owed HRS $2,002.60, and they were requested to make arrangements for payment. In response, on September 11, 1986, appellants sent HRS a check for $400.00 as payment in full for their child's two-month stay at Dozier, which tender of payment was accompanied by a lengthy letter explaining that the fee requested was "unaffordable," and in which they indicated also their disagreement with the methods by which the fee was assessed, and their intention to "appeal" the denial of their requested waiver.
On September 16, 1986, HRS returned the check to appellants and advised them that they had a "right to request an appeal pursuant to the provisions of Chapter 120, Florida Statutes." HRS further explained that Chapter 120 is "the Administrative Procedures Act, and provides the payor with an opportunity for appeal through an Administrative Hearing." Again, HRS failed to specify any time limit for requesting such "an appeal." Thereafter, appellants requested information on Chapter 120; and on October 14, 1986, HRS mailed to appellants portions of Chapter 120 and copies of certain rules which they were told "relate to the filing [of] a petition for an administrative hearing." Nothing in this letter or its enclosures advised of the time for requesting an administrative hearing.
The next communication received by appellants was a final order rendered by HRS on December 31, 1986, ordering appellants to pay the sum of $2,002.60 within thirty days, and advising them of their right to appeal the order to the First District Court of Appeal within thirty days of the date of the order. The order also recited that HRS had notified appellants of their right to appeal the assessment pursuant to Chapter 120 and that appellants had "failed to submit to the department a notice of appeal, either within thirty days of notification of their right to appeal or within thirty days of compliance with their request for further information." Thus, as seen by the above recitation of events, except for the exchange of communications between appellants and HRS, this controversy appears before this court without the benefit of an administrative proceeding below at which evidence was submitted and arguments presented and without the benefit of an agency order containing findings and conclusions on the multiple issues of fact and law generated by this appeal.
Appellants challenge the constitutionality of the statute, section 402.33, Florida Statutes (1986 Supp.), on due process and equal protection grounds, Fourteenth Amendment, United States Constitution; Article I, Section[s] 2, 9, Florida Constitution. Section 402.33(2) provides, in part:
(2) The Department, in accordance with rules established by it, shall either charge, assess, or collect, or cause to be charged, assessed, or collected, fees for any service it may provide its clients either directly or through its agencies or contractors... .
The statute excepts from its operation the cost of certain specified services, including diagnostic and evaluation procedures necessary to determine a client's eligibility and need for services provided by HRS, and educational services provided in lieu of public education. None of these excepted services are shown to have been included in the charges made by HRS in this case.
Another subsection of the statute, 402.33(3), provides that the "client" or the client's "responsible party," shall be liable *314 for any fee assessed by HRS as the cost of providing a service. The term "client" is defined as "any natural person receiving services, provided by the department, including supervision, care and maintenance, ...," and the "responsible party" means "any person legally responsible for the financial support of the client... ." Sections 402.33(1)(b) and (f), Florida Statutes (1986 Supp.).
By administrative rule, HRS has defined "service" to mean "aid, assistance or goods provided or purchased by the Department, either directly or through its agencies or contractors, including, but not limited to treatment, counseling, therapy, training or residential care." Rule 10-6.010(19), Florida Administrative Code.
Although the statutory provisions above referred to do not expressly direct HRS to assess and collect maintenance fees from parents of delinquent children who have been committed to the custody of the department, such an intention reasonably appears from references in the statute to collection of fees established pursuant to Chapter 39, Florida Statutes, which controls both delinquency and dependency proceedings.[1]
We find appellant's challenge to the facial validity of section 402.33 to be without merit. It is well established under both common and statutory law that parents are responsible for the support and maintenance of their minor children. Variety Children's Hospital, Inc. v. Vigliotti, 385 So.2d 1052 (Fla. 3rd DCA 1980). Their support obligation continues irrespective of their custodial rights. See State v. Interest of S.M.G., 313 So.2d 761 (Fla. 1975) (parents of delinquent child could be ordered to pay the person or institution having custody reasonable sums of money for the child's care, support and maintenance), and Department of Health & Rehabilitative Services v. Spencer, 430 So.2d 509 (Fla. 1st DCA 1983) (parents of dependent child could be required to pay fees to HRS for services received by their child while in foster care). Therefore, to the extent that section 402.33 is a codification of the preexisting duty of parents to support their children, there can be no violation of the due process and equal protection clauses of the federal or state constitutions.
However, section 402.33 does not by its express terms limit HRS to obtaining reimbursement for basic support costs; and as we interpret the position of HRS, it assumes that it has the authority under this statute to also assess and collect fees against the parents (or others liable) for the incarceration and rehabilitation of the juvenile delinquent. To the extent that the department has applied the statute as authority for assessment of costs of incarceration and rehabilitation, we hold that this interpretation violates the equal protection clause.
One of the declared purposes of Chapter 39 (Florida Juvenile Justice Act) is the protection of society, as evidenced by language found in section 39.001(2), which speaks of the necessity for removal of a child from custody of his parents "only when his welfare or the safety and protection of the public cannot be adequately safeguarded without such removal... ." The placement of a child in an institution because he has committed a delinquent act very clearly serves to protect society. Since the burden of maintaining institutions for the public benefit is to be borne by all of society through the imposition of taxes, it naturally follows that the placement of the entire burden on one particular class of persons is arbitrary and irrational. See, In Re Jerald C., 36 Cal.3d 1, 201 Cal. Rptr. 342, 678 P.2d 917 (1984) (father not required to reimburse county for expenses incurred when child was placed in a juvenile hall, then a boy's ranch, and finally committed to the California Youth Authority, because expenses were for confinement rather than support); Jesmer v. Dundon, 29 N.Y.2d 5, 323 N.Y.S.2d 417, 271 N.E.2d 905 *315 (1971) (mother of delinquent child who was placed in a boy's school was obligated to contribute $70.00 per month toward his support, the full cost of which was $1,000.00 per month); and Van Daam v. Hegstrom, 88 Or. App. 40, 744 P.2d 269 (1987) (proper to charge parents of institutionalized children on the same basis of those of children in foster care, but improper to distinguish between two classes of parents of minors found to have engaged in criminal conduct).
In the case before us, appellants' child was committed to the custody of HRS after he burglarized his parents' home while on runaway status. The full cost of institutional care for the child at the training school, according to the financial reporting forms sent to appellants by HRS, was $1,497.00 per month, $969.00 of which was billed to the parents by HRS using its "sliding scale" previously referred to above. Since there has been no hearing below, we have no evidentiary record indicating that the full cost of care stated by HRS included expenditures for incarceration and treatment. However, appellants' arguments on appeal are predicated upon the assumption that incarceration and treatment costs are included, and the department does not contend otherwise. Further, HRS in its brief asserts that it has the authority, under the statute and its rule implementing the same, to collect fees without differentiation between ordinary support and maintenance expenses, and costs of incarceration and treatment or rehabilitation of juvenile delinquents. We note further that HRS cites no authority for its position that incarceration and rehabilitation costs are recoverable, and that it fails to respond to authorities cited by appellants indicating the contrary. Accordingly, we hold that the final order entered by HRS, to the extent that it orders payment of costs of incarceration and treatment aimed at rehabilitation or correction of delinquent behavior, infringes upon appellants' equal protection rights.
We turn next to appellants' preemption argument. Appellants assert that the assessment of maintenance fees in juvenile delinquency proceedings pursuant to section 402.33 is preempted by the more specific provisions of section 39.11, Florida Statutes (1986 Supp.). Under this statute, the court at the time of adjudication "shall order" payment for the child's care, support and maintenance. No court order for care, support and maintenance has been entered in this case. Although the arguments of both parties on this point focus on these statutes as amended in 1986, we note that the 1986 amendments did not become effective until July 1, 1986, after the order of adjudication and commitment of appellants' child, and after at least a portion of the "services" for which charges are made were provided by HRS. Nevertheless, whether we consider the prior versions of sections 39.11 and 402.33, or the statutes as amended in 1986, our view on this issue remains the same. In sum, we agree with HRS that despite the existence of a statute vesting in the circuit courts the "power," among other things, to order payment by the natural parents of a delinquent child to the "person or institution" having custody of the child reasonable sums for the "care, support, maintenance, training, and education" of the child (section 39.11, Florida Statutes (1985)), the specific authority conferred upon HRS by section 402.33 to collect fees for services rendered to the child is not rendered inapplicable.
As pointed out by HRS, although both statutes have frequently undergone amendment since their enactment, there has been little substantive change since their inception. Thus, section 39.11(2) has been in existence in some form since at least 1955 (Laws of Florida, 1955, Ch. 29900, § 5), and section 402.33 since 1975 (Chapter 75-190, Laws of Florida (1975)). We have been furnished no authority, nor has any been disclosed by our own research, that these statutes have been regarded as inconsistent or repugnant, either as a matter of law in adjudicated cases, or as a matter of practice. In fact, our prior decision in Department of Health & Rehabilitative Services v. Spencer, supra, would indicate just the opposite, since that case reflects an independent action by HRS for collection of support costs for two minor children in *316 foster care under section 402.33. That the children in Spencer were adjudicated dependent, rather than delinquent, makes no difference on this issue, since the statutory powers of the circuit court with respect to orders for the support of delinquents and dependents were at the time of that decision substantially the same. Compare, section 39.11(1)(d) (powers of disposition as to delinquents) with section 39.41(1)(g) (powers of disposition as to dependents), Florida Statutes (1981).[2]
Although some ambiguity exists by reason of the existence of two statutory approaches to the collection of the cost of services provided by HRS, the 1986 amendments appear to be an attempt to harmonize the statutes to some extent. The language of section 39.11, as amended, provides that the court "shall order" the payment of "fees" by parents when their delinquent child is committed to the department. Thus, the payment of costs for services is mandated by section 39.11; and while we would agree that a literal reading of the amended statute now contemplates the entry of an order by the court at the time of adjudication of delinquency, we are not faced with the issue here and do not decide whether the amended statute presents an impediment to the authority of HRS to proceed for collection of fees for its services under section 402.33 without an order from the juvenile court. Even under the amended version of section 39.11, however, it is clear that the "fees" payable by the client or responsible party are to be determined by HRS, although the qualifying language "as established by the department" found in other provisions of the statutory amendments was omitted from the amended version of section 39.11. See, e.g., sections 39.032(7), 39.402(13), 39.422(7), Florida Statutes (1986 Supp.). We are persuaded that this inconsistency was inadvertent, rather than intentional. We reiterate, however, that in the present case the order of adjudication was entered under the statute as it existed prior to enactment of the 1986 amendment making the entry by the court of an order for care, support and maintenance mandatory. Although there may be issues that would require an order by the trial court as a necessary condition to collection efforts by HRS, such as whether a person is the "responsible party" liable for the care, support, and maintenance of the child, no such issues are raised in this case. We conclude that appellants' preemption argument is without merit.
Appellants also challenge the fee collection system employed by HRS which is contained in rules 10-6.001, et seq., Florida Administrative Code, on the ground that it constitutes an invalid exercise of delegated legislative authority. We decline to address this issue for the reasons set out below.
As pointed out in the recitation of facts contained in the forepart of this opinion, appellants were never given a clear point of entry into the administrative process. They were advised of their right to request a hearing but were never advised of the time limits for doing so. See, Prime Orlando Prop. v. Dept. of Business Reg., 502 So.2d 456, 458 (Fla. 1st DCA 1986), and cases therein cited, for the proposition that "notice of agency action which does not inform the affected party of his right to *317 request a hearing, and the time limits for doing so, is inadequate to `trigger' the commencement of the administrative process." Appellants were clearly entitled under HRS's own Rule 10-6.022(9) to an administrative hearing for review of the denial of their request for reduction or waiver of the fees assessed by HRS, but were not advised of the time limits for making such a request for hearing. On remand, therefore, appellants shall be entitled to such a hearing.
We conclude also that since appellants were not afforded a clear point of entry into the administrative process, their challenge to the validity of HRS's rule, necessarily presented here for the first time on appeal, is not properly before this court. While this court has on occasion addressed a rule challenge for the first time on appeal where it involved essentially a matter of law, Nord v. Florida Parole and Probation Commission, 417 So.2d 1176 (Fla. 1st DCA 1982), it would be inappropriate to do so in this case. Although it is apparent that HRS has attempted to comply with the mandates of section 402.33 in the establishment of charges for services provided, and in the adoption of uniform criteria and rules for determining a responsible party's ability to pay, whether the methodology selected here meets the requirements of law requires explanation and justification through testimony at a formal administrative hearing. On remand, appellants shall be entitled to challenge the rule in an administrative proceeding under Chapter 120, Florida Statutes.
The final order appealed is REVERSED, and the cause is REMANDED for further proceedings consistent with the foregoing opinion.
BOOTH and NIMMONS, JJ., concur.
NOTES
[1] Section 39.11, Florida Statutes (1965), contained an exception under which parents (and others) were not required to pay for the care, support, maintenance, training or education of children in the custody of the "state industrial schools for boys and girls." A 1967 amendment eliminated this exception. Chapter 67-61, Laws of Florida (1967).
[2] In 1986, Chapter 39 was amended to require the circuit court to order parents to pay "fees" to HRS or the institution having custody of the child who is continued in detention or shelter after a detention hearing, adjudicated a delinquent, or committed to HRS for treatment in a community control or youth program. Chapter 86-220, Laws of Florida (1986); sections 39.032(7), 39.11(2), 39.111(5), 39.402(14), Florida Statutes (1986 Supp.). With respect to dependency proceedings, section 39.41 was amended to require the circuit court to order parents to pay "child support" to the adult relative caring for the child, the licensed child/caring agency, or the Department. Section 39.01 was amended by adding the definition of "child support" which is defined as "a court ordered obligation enforced pursuant to ss. 409.2551-409.2597, for monetary support for the care, maintenance, training and education of a child." Section 39.01(10), Florida Statutes (1986 Supp.).

In addition, section 402.33(2) was amended to authorize HRS to charge fees for emergency shelter or emergency detention, care and custody after the holding of a detention hearing. This section was also amended to provide that the charging of fees established pursuant to Chapter 39 is not contingent on parental consent.