# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1325

_____

Pamela Gilmore,

        Appellant,

v.

County of Douglas, State of Nebraska,

        Appellee.

\*
\*
\*
\*
\*   Appeal from the United States
\*   District Court for the
\*   District of Nebraska.
\*
\*
\*

_____

Submitted: February 17, 2005
Filed: May 2, 2005

_____

Before LOKEN, Chief Judge, RILEY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Pamela Gilmore brought an action against the County of Douglas under 42 U.S.C. § 1983 alleging that the Douglas County Corrections Center (the DCCC) violated her Fourteenth Amendment equal protection rights by assessing her charges for collect telephone calls made to her from inmates in the facility. The district court[1] concluded that Gilmore failed to state a cause of action and dismissed the complaint pursuant to Fed. R. Civ. P. 12(b)(6). We affirm.

_____

[1] The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

## I. *Background*

The DCCC is an inmate facility operated by Douglas County (the County) in Omaha, Nebraska. The County contracts with private telecommunications companies to provide inmates with telephone services at the DCCC. The private companies install and operate telephones at the DCCC. As part of the contract, the private companies charge recipients of collect calls for the outgoing calls made by inmates at the DCCC. The contracts require that the County receive 45% of the gross billable revenue that is generated from inmate calls. Collect calls originating from the DCCC are more expensive than normal collect calls.[2]

Gilmore's daughter was incarcerated at the DCCC from September 2002 through January 2003. During that time, Gilmore accepted collect calls from her daughter on a daily basis. Gilmore claimed that she needed to keep in constant communication with her daughter because she was caring for her daughter's children. After her release from the DCCC, Gilmore's daughter moved in with Gilmore. Then, Gilmore's daughter began to accept inmate initiated collect calls from the DCCC inmates that she befriended during her incarceration. These calls are reflected on Gilmore's phone bill.

Gilmore filed a complaint against the County alleging that the 45% commission paid to the County by the DCCC's telecommunications providers is a tax or levy imposed on friends and relatives of inmates in violation of the Equal Protection Clause of the Fourteenth Amendment. She sought class certification and requested money damages and injunctive relief. The district court granted the County's motion to dismiss, and, in the process, denied class certification.[3]

---

[2] The record in this case suggests that a 15-minute inmate-initiated call from the DCCC costs $2.30.

[3] Gilmore does not appeal the district court's ruling with respect to class certification.

## II. *Discussion*

We review a district court's grant of a motion to dismiss for failure to state a claim de novo, taking all facts alleged in the complaint as true. *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004). A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts to warrant a grant of relief. *Id*. A district court must accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).

As a threshold matter, to establish the particular equal protection claim alleged by Gilmore, she must establish that some government action caused her to be treated differently from others similarly situated.[4] *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir.1998); *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004). Gilmore has not alleged that she is a member of any suspect class or that a fundamental right has been infringed. When an equal protection claim is neither based on a "suspect class" or grounded in a fundamental right, it is subject to a rational basis review. *Carter,* 392 F.3d at 968; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446–47 (1985). Additionally, while we view facts alleged in the complaint as true, we recognize that "a legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data." *Id*. (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993)). We have thus explained that because "all that must be shown is 'any reasonably conceivable state of facts that could provide a rational basis for the classification,' it is not necessary to wait for further factual development" in order to conduct a rational basis review on a motion to dismiss. *Id*. (citations omitted).

---

[4]In analyzing Gilmore's claim, the district court assumed that the charges assessed through the private telecommunications companies constituted action by the County under color of law. For purposes of this appeal then, we will also assume that Gilmore has properly alleged a claim arising out of some government action.

A. *Similarly Situated*

In her complaint, Gilmore drew her equal protection analysis from a distinction between two classes of recipients of collect calls–those who receive telephone service in general including collect calls and those who receive collect calls from inmates at the DCCC. Gilmore's theory is that people who receive collect calls from inmates at the DCCC are treated differently from those general telephone service recipients who receive collect calls from callers not incarcerated at the DCCC. Accordingly, Gilmore asserted that the County was impermissibly levying a special tax exclusively on those persons who accepted collect calls from inmates at the DCCC in violation of their right to equal protection of the laws.

The district court concluded that "[w]hile persons who receive collect calls from inmates and persons who receive collect calls from non-inmates may be similarly situated for many purposes, they are not similarly situated for purposes of the billing for such collect calls." *Gilmore v. Douglas County*, No. 8:03cv366, slip op. at 5 (D. Neb. Jan. 12, 2004). The district court's reasoning rested primarily on *Daleure v. Kentucky*, 119 F. Supp. 2d 683, 691 (W.D. Ky. 2000), where a federal district court, addressing a comparable issue, stated:

> The connection between the inmates and the recipients of their calls cannot be severed. It is the relationship to inmates alone that defines the group. If security precautions affect the telephone services that are available to inmates, this will inevitably impact the inmate call recipients. Thus, the real question is whether inmates and non-inmates are similarly situated. This court finds that they are not . . . . Because the recipients of inmate calls are not similarly situated with the recipients of non-inmate calls, Plaintiffs would have to allege they were discriminated against as compared to other recipients of inmate calls to state a supportable claim.

Thus, the district court recast the classifications drawn by Gilmore in her complaint finding no similar situation extant between those who received calls from DCCC inmates and those who received collect calls from the general public.

Nonetheless, Gilmore's claim fails even when applying the classification drawn in her complaint. An equal protection analysis requires that plaintiffs be "similarly situated to another group for purposes of the challenged government action." *Carter,* 392 F.3d at 969. This equal protection concept recognizes that "[u]sually one must look to the end or purpose of the legislation in order to determine whether persons are similarly situated in terms of that governmental system." *See* R. Rotunda, J. Nowak & J. Young, *Treatise on Constitutional Law: Substance and Procedure* § 18.2 (3d ed. 1999). "Once a court has found an end of government which does not in itself violate the Constitution, it can analyze the way in which the government has classified persons in terms of that end." *Id*.

Here, even assuming the money received by Douglas County is a tax, the purpose of this tax, as reasoned by the district court, was to recoup costs associated with the space and maintenance of the telephones provided to inmates. Under rational basis review, a plaintiff must show more than that the government treated two classes differently for some irrational reason, a plaintiff must show that the government intended to discriminate against one class. *Batra v. Bd. of Regents of Univ. of Nebraska*, 79 F.3d 717, 721 (8th Cir. 1996). In this case, the alleged government action is aimed at generating revenue to defray the costs of providing inmates with a specific service, it is not aimed at treating persons who receive collect calls from the DCCC differently from those who generally receive collect calls.

Gilmore cites to several cases out of other jurisdictions relating to charges billed to the guardians of persons in state custody for services provided to the persons in state custody. *See Dupes v. Dep't of Health and Rehabilitative Servs.*, 536 So.2d 311 (Fla.App. 1 Dist. 1988); *Van Daam v. Hegstrom*, 744 P.2d 269 (Ore. 1987); *State*

*v. Miller*, 472 A.2d 1272 (Conn. 1984); *In re Jerald C.*, 678 P.2d 917 (Cal. 1984); *Jesmer v. Dundon,* 271 N.E.2d 905 (N.Y. 1971). The cases are inapposite. Put simply, the government has not charged Gilmore as a guardian for services rendered to Gilmore's daughter. Rather, the charges Gilmore complains of resulted from services provided by the DCCC to inmates for making telephone calls to persons outside its facility. Gilmore is not obligated to accept collect calls from inmates at the DCCC.[5]

## B. *Rational Basis*

Gilmore also contends that in judging the rational basis of the assumed government action, the district court erroneously relied on new and unsupported factual determinations in violation of the standards applied in a motion to dismiss. Gilmore seizes on the following statement in the court's order:

> The governmental unit operating any jail or prison must incur a variety of costs in order to provide inmates with access to telephone services. These costs include space, utilities, maintenance, security, and the time of administrative personnel.

*Gilmore v. Douglas County*, No. 8:03cv366, slip op. at 5 (D. Neb. Jan. 12, 2004). Gilmore argues that there is nothing in her complaint to reveal to the court that the pay phone system at DCCC caused the County to incur these costs. Furthermore, Gilmore explains that the court improperly assumed that the charges for the calls were used to recoup costs.

Generally, a district court is supposed to refrain from considering facts not referenced in a complaint when considering a motion to dismiss. *See Inland Container Corp. v. Cont'l Ins. Co.*, 726 F.2d 400, 401 (8th Cir. 1984) (per curiam).

---

[5]In addition, Gilmore's claim stems from inmates making collect calls to Gilmore's daughter. These charges do not even arguably relate the fee shifting in guardian cases cited by Gilmore.

However, in a case alleging a violation of equal protection that invokes a rational basis standard, "we presume legislation is valid and will sustain it if the classification drawn by the statute is rationally related to a legitimate [governmental] interest." *Chance Mgmt., Inc. v. South Dakota,* 97 F.3d 1107, 1114 (8th Cir. 1996), *cert. denied,* 519 U.S. 1149 (1997) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 440 (1985)). Gilmore has the burden of proving "that the classification is so attenuated to its asserted purpose that the distinction it draws is wholly arbitrary and irrational." *Id*. at 1114 (citing *City of Cleburne*, 473 U.S. at 446). She must, therefore, also negate "every conceivable basis which might support" the classification. *Indep. Charities of Am., Inc. v. Minnesota*, 82 F.3d 791, 797 (8th Cir. 1996) (citing *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 315 (1993)).

Gilmore casts her Equal Protection claim in the form of discriminatory taxation. When we review the constitutionality of a tax, the appropriate standard is one of "relaxed scrutiny," under which a statutory classification will stand if any characterization of the facts may reasonably be said to justify it. *Richards v. C.I.R.*, 745 F.2d 524, 526 (8th Cir. 1984). Moreover, the government has "especially broad latitude in creating classifications and distinctions in tax statutes." *Id*. (citing *Regan v. Taxation with Representation of Wash.*, 461 U.S. 540 (1983)).

We must recognize that "a legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315 (1993). Thus, because "all that must be shown is 'any reasonably conceivable state of facts that could provide a rational basis for the classification,' it is not necessary to wait for further factual development." *Knapp v. Hanson*, 183 F.3d 786, 789 (8th Cir. 1999) (quoting *Beach Communications*, 508 U.S. at 313 (1993)). Accordingly, the district court was within its discretion to formulate a conceivable basis for the government action at issue in this case. *See Cuno v. DaimlerChrysler, Inc.,* 386 F.3d 738, 748 (6th Cir. 2004) (deciding rational basis on 12(b)(6) motion); *see also Carter v. Arkansas*, 392 F.3d

965, 968 (8th Cir. 2004) (explaining that a district court may conduct a rational basis review on a motion to dismiss).

For the foregoing reasons, we affirm.

_____