[No. B088907. Second Dist., Div. Two. Sept. 4, 1996.]

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. RALPH V., Defendant and Appellant.

COUNTY OF LOS ANGELES, Plaintiff and Respondent, v. ALICE V., Defendant and Appellant.

**COUNSEL**

Jensen & McIntosh and Paul Rolf Jensen for Defendants and Appellants.

Gil Garcetti, District Attorney, George M. Palmer and Andrea R. Schrote, Deputy District Attorneys, for Plaintiff and Respondent.

**OPINION**

**FUKUTO, J.**—Ralph and Alice V. appeal from judgments requiring them to pay the County of Los Angeles (county) a total of $20,154 as reimbursement

for support of their minor son while confined as a ward of the juvenile court under Welfare and Institutions Code section 602.[1] Appellants principally contend that the judgments were improperly imposed, because the trial court did not require the county to itemize and prove the particular components of support it sought to recover. We conclude that the procedure employed complied with constitutional limitations on governmental assessment of support from the parents of juvenile court wards. Although we therefore affirm the judgments, we also direct further proceedings to ensure that the funds recovered under the judgments will be disposed of in accordance with statutory and constitutional requirements.

## STATEMENT

In 1991 appellants' 14-year-old son was found to have committed a battery upon Alice V., and was declared a ward of the juvenile court under section 602. The court ordered him removed from appellants' custody and "suitably placed." Except for one and one-half months during which he ran away, the minor was confined in either juvenile hall or county-licensed youth facilities (Rancho San Antonio, Eagleston Youth Center, and Pacific Lodge Boys' Home) between January 1992 and his release to Alice V.'s custody sometime in 1994.[2]

In 1993 the county filed separate actions against appellants, to recover "child support" furnished to the minor during his confinement. The cases were heard together, in simplified fashion pursuant to orders to show cause. (See § 11350.1, subd. (a).) Ralph V.'s monthly disposable income was stipulated to be $3,171, while Alice V.'s was $1,126.

The county introduced no evidence concerning the nature, source, or amount of the minor's support while confined, other than a schedule indicating 27 payments, most of them for monthly amounts exceeding $3,000. Instead, the county relied upon the rebuttable presumption of Family Code section 4057, which designates as the proper amount of child support the amount established by the statewide guideline formula of Family Code section 4055. Using that mathematical guideline, the county calculated and sought $20,154, based on 12 months' guideline support at $557 and 16 months at $881 (derived from appellants' then incomes).

In a closing memorandum upon submission, Ralph V. argued that "if the Court is to apply the California Supreme Court's holding in *Dell J.*,"

---

[1] Undesignated section citations are to that code. Appellants' appeals from the separate judgments against them have been consolidated.

[2] The more than two years exceeded the maximum term of physical custody permitted for battery under section 726, subdivision (c). (See Pen. Code, § 243.) Neither the record nor the parties have enlightened this discrepancy.

referring to *County of San Mateo* v. *Dell J.* (1988) 46 Cal.3d 1236 [252 Cal.Rptr. 478, 762 P.2d 1202] (*Dell J.*), "then the County bears the burden of demonstrating that the costs it is seeking to impose consist of support only, and do not include any costs of incarceration, treatment, or supervision."

With respect to each appellant, the court determined that there was "Welfare Reimbursement due in the sum of $20,154.00 as of April 30, 1994, without prejudice." Allocating this amount in proportion to appellants' respective incomes, the court adjudged that Ralph V. should pay the county $15,317.04, at the rate of $228 per month, and that Alice V. should pay $4,836.96, at $72 per month. Orders for assignment of wages and earnings followed.

## DISCUSSION

■ The judgments have their source in section 903, which provides for liability for the costs of supporting minors in custody under orders of the juvenile court.[3] Appellants' contentions that the judgments are invalid are based on two Supreme Court decisions that considered the constitutionality

---

[3]Section 903 presently provides, essentially as it did at the time of the proceedings below, as follows: "(a) The father, mother, spouse, or other person liable for the support of a minor, the estate of that person, and the estate of the minor, shall be liable for the reasonable costs of support of the minor while the minor is placed, or detained in, or committed to, any institution or other place pursuant to Section 625 or pursuant to an order of the juvenile court. However, a county shall not levy charges for the costs of support of a minor detained pursuant to Section 625 unless, at the detention hearing, the juvenile court determines that detention of the minor should be continued, the petition for the offense for which the minor is detained is subsequently sustained, or the minor agrees to a program of supervision pursuant to Section 654. The liability of these persons and estates shall be a joint and several liability. [¶] (b) The county shall limit the charges it seeks to impose to the reasonable costs of support of the minor and shall exclude any costs of incarceration, treatment, or supervision for the protection of society and the minor and the rehabilitation of the minor. In the event that court-ordered child support paid to the county pursuant to subdivision (a) exceeds the amount of the costs authorized by this subdivision and subdivision (a), the county shall either hold the excess in trust for the minor's future needs pursuant to Section 302.52 of Title 45 of the Code of Federal Regulations or, with the approval of the minor's caseworker or the probation officer, pay the excess directly to the minor. [¶] (c) It is the intent of the Legislature in enacting this subdivision to protect the fiscal integrity of the county, to protect persons against whom the county seeks to impose liability from excessive charges, to ensure reasonable uniformity throughout the state in the level of liability being imposed, and to ensure that liability is imposed only on persons with the ability to pay. In evaluating a family's financial ability to pay under this section, the county shall take into consideration the family income, the necessary obligations of the family, and the number of persons dependent upon this income. Except as provided in paragraphs (1), (2), (3), and (4), 'costs of support' as used in this section means only actual costs incurred by the county for food and food preparation, clothing, personal supplies, and medical expenses, not to exceed a combined maximum cost of fifteen dollars ($15) per day, except that: [¶] (1) The maximum cost of fifteen dollars ($15) per day shall be adjusted every third year beginning January 1, 1988, to reflect the percentage

of imposing such liability on the parents of juvenile court wards: *Dell J.*, *supra*, 46 Cal.3d 1236, and its predecessor *In re Jerald C.* (1984) 36 Cal.3d 1 [201 Cal.Rptr. 342, 678 P.2d 917] (*Jerald C.*).

In *Jerald C.*, the court held unconstitutional the pre-1984 version of section 903, which provided that the parents or others responsible for the support of a minor were liable for the minor's "care, support, and maintenance" in any institution in which the minor was placed pursuant to order of the juvenile court. The court's holding rested on the established principle that equal protection forbids the state from imposing on a discrete class of persons the costs of providing a state function operated for the public benefit—here, from requiring the parents of a person confined for the public safety to pay the costs of his or her supervision and maintenance. The court recognized that the constitution did not thus preclude requiring reimbursement of state-provided *support* by those legally obligated to support a family member. But "the common law duty to support minor children does not authorize the state to recover the costs of confinement imposed for the protection of society and the minor and his rehabilitation." (*Jerald C.*, *supra*, 36 Cal.3d at p. 10.)

A concurring opinion in *Jerald C.*, which actually reflected the views of the court's majority (see *Dell J.*, *supra*, 46 Cal.3d at p. 1241, fn. 5), perceived no theoretical impediment to requiring the parents of a ward to reimburse for his or her support, as opposed to costs of confinement and rehabilitation. However, the four concurring justices found that the version of section 903 at bench did not provide for differentiation of charges so as to satisfy constitutional limitations. The concurring opinion suggested that the Legislature "could do much to simplify collections while maintaining constitutional standards" (*Jerald C.*, *supra*, 36 Cal.3d at p. 13 (conc. opn. of

change in the calendar year annual average of the California Consumer Price Index, All Urban Consumers, published by the Department of Industrial Relations, for the three-year period. [¶] (2) No cost for medical expenses shall be imposed by the county until the county has first exhausted any eligibility the minor may have under private insurance coverage, standard or medically indigent Medi-Cal coverage, and the Robert W. Crown California Children's Services Act (Article 2 (commencing with Section 248) of Chapter 2 of Part 1 of Division 1 of the Health and Safety Code). [¶] (3) In calculating the cost of medical expenses, the county shall not charge in excess of 100 percent of the AFDC fee for service average Medi-Cal payment for that county for that fiscal year as calculated by the State Department of Health Services; however, if a minor has extraordinary medical or dental costs that are not met under any of the coverages listed in paragraph (2), the county may impose these additional costs. [¶] (4) For those placements of a minor subject to this section in which an AFDC-FC grant is made, the district attorney shall seek an order pursuant to Section 11350 and the statewide child support guideline in effect in Article 2 (commencing with Section 4050) of Chapter 2 of Part 2 of Division 9 of the Family Code. For purposes of determining the correct amount of support of a minor subject to this section, the rebuttable presumption set forth in Section 4057 of the Family Code is applicable."

Kaus, J.)), by determining which expenses should be appropriately charged to parents, establishing guidelines to encourage comparable charges by counties, and perhaps establishing a graduated schedule, "tailored as near as need may be to *the particular parent's support obligation.*" (*Id.* at pp. 13-14, italics added.)

Amendments to section 903 in 1983 added restrictions responsive to *Jerald C.* (which had first been decided in 1982, the ultimate decision coming on rehearing). Among other things, the revision made it "the responsibility of a county to demonstrate to any person against whom it seeks to enforce the liability established by this section, that the charges it seeks to impose are limited to the reasonable costs of support of the minor and that these charges exclude any costs of incarceration, treatment, or supervision for the protection of society and the minor and the rehabilitation of the minor." (Stats. 1983, ch. 1135, § 3, p. 4307.) In addition, the county was required to "separately itemize the cost of each major component, such as food, clothing, and medical expense, contained within the costs of support of the minor, for any person against whom the county seeks to impose liability . . . ." (*Ibid.*)

In *Dell J., supra,* 46 Cal.3d 1236, the court revisited the area under the revised statute, and considered whether equal protection precluded the state from seeking parental reimbursement of Aid to Families With Dependent Children-Foster Care (AFDC-FC) funds used to support a minor placed in a foster care group home after adjudication of wardship under section 602. In line with the majority view in *Jerald C., supra,* 36 Cal.3d 1, the *Dell J.* court held: "[W]here a preexisting legal obligation of support of the dependent is established, there is no constitutional impediment to the state seeking reimbursement from the responsible family members of the reasonable costs of support and maintenance of such dependent for the duration of his placement outside the family home, where such uniform costs can be identified and segregated out from nonallowable costs, allocated amongst similarly situated dependents in a reasonable manner, and where the responsible relatives' liability is subject to reduction according to their reasonable ability to pay." (*Dell J., supra,* 46 Cal.3d at p. 1252.)

However, the *Dell J.* court reemphasized the importance of distinguishing between reimbursable costs of support and constitutionally nonrecoverable costs of confinement, treatment, supervision, and rehabilitation. Rejecting the county's contention that none of the AFDC expenditures it sought to have reimbursed was disqualified, because foster care group homes were not "secure facilit[ies]," the court made the following statements, upon part of which appellants heavily rely: "[C]osts of 'treatment . . . [and] supervision for the protection of society and the minor and the rehabilitation of the

minor' (§ 903, subd. (b)) are plainly incurred in such facilities, and the Legislature, consistent with principles of equal protection announced in *Jerald C.*, has expressed its clear intent that the county shall bear such costs (as it must bear costs associated with 'incarceration'), and shall further have the burden of demonstrating that the charges it seeks to impose are limited to the reasonable costs of support of the minor. (*Ibid.*) [¶] We therefore conclude that, irrespective of whether a minor is placed in a 'secure' institution or 'nondetention' facility such as the foster care group homes in which the minor was here placed, the county must bear the burden of demonstrating that the costs it seeks to impose are limited to the reasonable costs of support, and exclude any costs of incarceration, treatment, or supervision for the protection of society and the minor and the rehabilitation of the minor." (*Dell J.*, *supra*, 46 Cal.3d. at p. 1254.) Because the reimbursement order in *Dell J.* clearly covered only part of the costs of support and maintenance, it was held valid.

In view of *Dell J.*, *supra*, 46 Cal.3d 1236, appellants' omnibus contention that they were not at all liable for reimbursement of support by dint of *Jerald C.*, *supra*, 36 Cal.3d 1, is meritless. Both the majority in *Jerald C.* and the court in *Dell J.* found it constitutional to require parents to reimburse the costs of supporting their children while confined under section 602, as distinguished from the costs of incarceration, treatment, supervision, and rehabilitation.

The remaining issue appellants pose is whether the county was entitled to rely for recovery on the Family Code child support guideline, without itemizing the costs it sought to recover, or demonstrating that they were "limited to the reasonable costs of support, and exclude any costs of incarceration, treatment, or supervision for the protection of society and the minor and the rehabilitation of the minor." (*Dell J.*, *supra*, 46 Cal.3d. at p. 1254.)

The county's and the trial court's use of the child support guideline was the outgrowth of numerous further amendments to section 903. Effective 1985, the Legislature inserted a provision limiting recoverable support costs to "only actual costs incurred by the county for food and food preparation, clothing, personal supplies, and medical expenses, not to exceed a combined maximum of fifteen dollars ($15) per day," subject to Consumer Price Index adjustments and certain further limitations on medical expenditures. (§ 903, subd. (c).)[4] However, in 1992 the provision requiring the county to itemize these charges was deleted from the section. Finally, in 1993, the Legislature

---

[4]This provision originally did not apply to cases in which an AFDC-FC grant had been made. That exception was eliminated in 1992.

made two significant administrative changes, while retaining the above noted limitations of recoverable costs and their amount.

First, subdivision (c)(4) was added, presently providing in part that "For purposes of determining the correct amount of support of a minor subject to this section, the rebuttable presumption set forth in Section 4057 of the Family Code is applicable," i.e., that the child support guideline amount is the correct amount of child support to be ordered. Second, instead of being required to "demonstrate" to the parents that the charges it sought were limited to reasonable support and excluded costs of confinement, supervision, rehabilitation, and treatment, the county henceforth was simply enjoined to "limit" these charges accordingly. (§ 903, subd. (b).) Furthermore, "In the event that court-ordered child support paid to the county pursuant to [the statute] exceeds the amount of the costs authorized . . . , the county shall either hold the excess in trust for the minor's future needs pursuant to [a federal AFDC regulation] or, with the approval of the minor's caseworker or the probation officer, pay the excess directly to the minor." (*Ibid.*)

Thus, under section 903 as amended as of the proceedings below, parental liability to the county for support of a confined ward remains specifically restricted to elements the recovery of which does not deny equal protection, under *Jerald C., supra,* 36 Cal.3d 1, and *Dell J., supra,* 46 Cal.3d 1236. However, the county no longer need affirmatively demonstrate that the charges it seeks are so limited, or itemize them. Instead, the statutory child support guideline amount is presumed appropriate, but the county is obliged to hold or disburse any excess over the reimbursable amount that is so recovered for the benefit of the minor.

We do not believe that this system, utilized in the present case, infringes constitutional guarantees as appellants contend. The equal protection principles set forth in *Jerald C., supra,* 36 Cal.3d 1 and reiterated in *Dell J., supra,* 46 Cal.3d 1236 require that the state limit its parental charges to those reflective of the parents' own primary duty of support, and not seek to pass on public costs of incarceration, treatment, supervision and rehabilitation. Section 903, subdivision (b) continues to "limit" recoverable charges precisely so. That the statute no longer requires the county to "demonstrate" that it is complying, but instead provides for presumptive use of the child support guideline, with remission required should the amount so awarded be excessive, does not offend the equal protection clause. The statute only enforces the preexisting parental obligation of support, and does not entitle the county to assess parents for more than their own obligations or the county's constitutionally permissible reimbursement.

The Supreme Court's declaration in *Dell J., supra,* 46 Cal.3d at page 1254, that ". . . the county must bear the burden of demonstrating that the costs it

seeks to impose are limited to the reasonable costs of support, and exclude any costs of incarceration [etc.]," cannot properly be read, in isolation, as imposing or reflecting a constitutionally derived and immutable procedural burden. As quoted in full above (*ante,* pp. 1845-1846), the court made this statement immediately after noting that "the burden of [so] demonstrating" had been inserted in section 903 by the Legislature, in addition to the substantive limitation on county recovery "consistent with principles of equal protection announced in *Jerald C.*" (*Dell J., supra,* 46 Cal.3d at p. 1254.) We read the Supreme Court's use of the "burden of demonstrating" language as simply an application of then existing statutory requirements to the issue before it (recovery for costs of support in nonsecure facilities).

The present, more streamlined system, which substitutes the child support guideline presumption instead of case-by-case itemization while still restricting public reimbursement to constitutionally permissible elements, directly responds to the *Jerald C.* majority's suggestions for the Legislature's "simplify[ing] collections while maintaining constitutional standards." (*Jerald C., supra,* 36 Cal.3d at p. 13 (conc. opn. of Kaus, J.); see *ante,* p. 1844.) The two are not incompatible. So long as section 903 continues to limit the nature and amount of charges subject to parental reimbursement to those constitutionally permissible, the statute's procedural utilization of the child support guideline presumption as the baseline for recovery does not offend equal protection, by imposing excessive, improper charges. By virtue of the express and detailed limitations in subdivisions (b) and (c), the county remains obligated to ascertain the actual, reimbursable costs of support, and to limit its ultimate recovery to those allowable costs, by setting aside for or refunding to the minor any excess support provisionally recovered by application of the guideline presumption.

Because the county must, under section 903, abide by and implement the substantive limitations charted in *Jerald C., supra,* 36 Cal.3d 1, and *Dell J., supra,* 46 Cal.3d 1236—indeed section 903's provision for use of the child support guideline stands constitutional precisely because of these requirements—we asked the county to explain how it does (and thus will in this case) accomplish and ensure compliance with the constitutional and statutory mandate that it retain only the allowable elements and amount of support. The county ultimately declined to enlighten us, on the formal ground that what it knows would not be subject to judicial notice. However, the county also invited an order regarding "proper distribut[ion]" of the funds required by the judgments. We believe that such an order, requiring the county to account, is appropriate in this case, given both the centrality of such reckoning to the proper, constitutional operation of section 903, and the lack of assurance to date about how that will be accomplished.

Accordingly, on remand the trial court shall require the county to render an accounting of the costs of support enumerated and allowable by section 903, subdivisions (b) and (c) through (c)(3), that were incurred for the minor during his custody under order of the juvenile court. If the judgments exceed those costs, the court shall retain jurisdiction to ensure that the excess is distributed as required by section 903, subdivision (b), section 11350, subdivision (a)(2), or other applicable law.

## DISPOSITION

The judgments are affirmed. The cases are remanded for further proceedings as required by this decision. The parties shall bear their own costs.

Boren, P. J., and Zebrowski, J., concurred.