(112 P.3d 956)
No. 92,154

STATE OF KANSAS, *ex rel.*, D.S.M., JR., and H.M.M., Minor Children Under the Age of Eighteen, and the SECRETARY OF SRS, *Appellees*, v. CARLEY F. MEALEY, *Appellant*.

Opinion filed May 27, 2005.

*Jim Lawing*, of Wichita, for appellant.

*Randy M. Barker*, of Kansas Department of Social and Rehabilitation Services, for appellees.

Before GREENE, P.J., CAPLINGER and BUSER, JJ.

GREENE, J.: Carley F. Mealey, natural mother of D.S.M., Jr., and H.M.M., appeals the district court's judgment upholding the constitutionality of Kansas statutes allowing the Kansas Department of Social and Rehabilitation Services (SRS) to recoup from a parent of reintegrated children the expenses for care of that parent's children while in out-of-home placement. We affirm.

*Factual and Procedural Background*

Mealey's children were adjudged children in need of care (CINC) and were placed in SRS custody from December 3, 1999, until March 31, 2001. Mealey did not appeal the CINC decision. In May 2000, SRS filed a petition against Mealey seeking recoupment of expenses based upon the Kansas Child Support Guidelines (KCSG). In January 2001, SRS filed an amended petition for reimbursement of the actual amount of the children's expenses while they were in SRS custody, totaling $56,602 as of that date, plus $2,177 per month per child thereafter.

Mealey argued at trial that the SRS expenses were not reasonably incurred because the children were not properly found to be in need of care. The trial court properly refused to address this issue since Mealey did not timely appeal the CINC finding. Mealey also argued that the medical expenses were not reasonable because SRS did not submit the children's medical bills to the health insurance company where Mealey had coverage for the children after she provided the health insurance information to SRS. Finally, Mealey claimed that the SRS action to recover costs violated the Equal Protection Clause of the United States Constitution. The trial court entered judgment in favor of SRS in the amount of $27,996.54, plus interest, but did not make any findings of fact or conclusions of law on the issue of the constitutionality of the CINC recoupment statutes. Mealey timely appealed.

On the initial appeal, SRS admitted during oral argument that the usual procedure for determining what a parent should pay for care of a child in SRS's custody is based on the KCSG and the parent's income. *State ex rel. D.S.M. v. Mealey (Mealey I)*, Case No. 89,314, unpublished opinion filed July 3, 2003, slip op. at 6. This court found that if this procedure had been followed, Mealey would have been responsible for approximately $8,000 rather than the $27,996.54, plus interest, that the trial court awarded. *Mealey I*, slip op. at 6. The court briefly addressed Mealey's constitutional claims, but ultimately concluded that the absence of findings of fact and conclusions of law precluded review of this issue. *Mealey I*, slip op. at 5-7.

On remand, Mealey argued that the CINC recoupment statutes were unconstitutional under the rational basis test for equal protection. In addressing this issue, the trial court stated:

"Mrs. Mealey argues that the statutes which provide for SRS's ability to seek reimbursement violate the Equal Protection Clause of the U.S. Constitution, specifically that the CINC statutes arbitrarily burden one specific class, that being the parents of CINC children, with the cost of public assistance and that the State should bear those costs.

"The first issue to address is whether the duty imposed upon Mrs. Mealey bears a rational relationship to the accomplishment of the State's purpose, that is, the care of children in need of care. The Court of Appeals has already addressed this issue finding the statutes meet the rational basis test. To the extent the Court of

Appeals did not make those findings, this Court finds the statutes meet the rational basis test for the reasons stated in the record."

The trial court entered judgment in favor of SRS in the amount of $8,064 after finding that a parent cannot be ordered to pay more than the amount that would be set under K.S.A. 38-1595 and that its previous award of $27,996.54 was in error. Mealey again appeals, challenging the constitutionality of the CINC recoupment statutes.

*Standard of Review*

The determination of whether a statute violates the Constitution is a question of law over which appellate courts have unlimited de novo review. *Mudd v. Neosho Memorial Regional Med. Center*, 275 Kan. 187, 197, 62 P.3d 236 (2003).

*Did the District Court Err in Upholding the Constitutionality of Kansas CINC Recoupment Statutes, K.S.A. 39-718b and K.S.A. 38-1512?*

Mealey argued to the district court that Kansas recoupment statutes, specifically K.S.A. 38-1512 and K.S.A. 39-718b, violate equal protection mandates because they lack a rationally based legitimate state interest. On appeal, Mealey argues that the "strict scrutiny" standard rather than the rational basis standard applies and that the statutes have not been shown necessary to serve a compelling state interest and are not narrowly drawn to do so. Mealey summarizes her argument on appeal as follows:

"[P]arents whose children are reintegrated into their homes after an intervention by the State cannot support reunification of the family if SRS takes from them the financial means they need to raise and educate those children after they have temporarily been in state custody. Since state policy under K.S.A. 38-1501 is to serve children's interests, and the 14th Amendment guarantees that a mother's interest in her relationship with her children is a fundamental liberty, only in rare cases should recovery of the costs of Kansas' care of children program allow SRS to seek reimbursement from a parent for that program's expenses."

At the outset we must determine which of the two equal protection standards applies, the strict scrutiny test or the rational basis test. Both in her initial challenge and on remand, Mealey argued

that the rational basis test applied; at no time prior to this appeal did Mealey urge the application of a strict scrutiny test. It is well settled that issues not raised and arguments not made before the district court cannot generally be addressed on appeal. See *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003). Moreover, we conclude that the rational basis test is the proper measure of equal protection under these circumstances. The rational basis test has traditionally been applied where equal protection challenges have been brought against social and economic legislation. *KPERS v. Reimer & Koger Assocs., Inc.*, 261 Kan. 17, 42, 927 P.2d 466 (1996). Mealey has not cited any authority applying the strict scrutiny test in the context of an equal protection challenge to recoupment statutes of this nature. For all of these reasons, we apply the traditional rational basis test here.

The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken it must clearly appear that the statute violates the Constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. *State v. Engles*, 270 Kan. 530, 531, 17 P.3d 355 (2001).

The concept of equal protection of the law is one which " ' "emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." ' " *Mudd*, 275 Kan. at 198. Under the rational basis test, however, " 'a law is constitutional, despite some unequal classification of citizens, if the "classification bears some reasonable relationship to a valid legislative objective. [Citations omitted.]" ' " *Mudd*, 275 Kan. at 198.

For a statute to pass constitutional muster under the rational basis standard, it must meet a two-part test: (1) It must foster legitimate goals, and (2) the means chosen by the legislature to achieve those goals must bear a rational relationship to those goals. *Mudd*, 275 Kan. at 198. Additionally, a party " 'asserting the unconstitutionality of a statute under the rational basis standard has

the burden to negate every conceivable basis which might support the classification.' " *Mudd*, 275 Kan. at 198.

" 'The "reasonable basis" [or rational basis] test is violated only if the statutory classification rests on grounds wholly irrelevant to the achievement of the State's legitimate objective. The state legislature is presumed to have acted within its constitutional power even if the statute results in some inequality. Under the reasonable basis test, a statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' " *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 847, 942 P.2d 591 (1997).

The State urges us to recognize the universal principle that parents have a duty to support their children. Indeed, Blackstone acknowledges that the duty of parents to provide for the maintenance of their children "is a principle of natural law;" an obligation "laid on them not only by nature herself, but by their own proper act, in bringing them into the world." 1 Blackstone, Commentaries *447. Our Supreme Court acknowledged this principle in *Doughty v. Engler*, 112 Kan. 583, 584, 211 Pac. 619 (1923), stating:

"By the great weight of judicial opinion in this country parents are under a legal duty, regardless of any statute, to maintain their legitimate minor children [citation omitted], the obligation being sometimes spoken of as one under the common law and sometimes as a matter of natural right and justice, and often accepted as a matter of course without the assignment of any reason."

The goals of the legislation subject to Mealey's challenge are well stated, and they both acknowledge and protect this universal principle. K.S.A. 38-1512(a)(4) states that "[n]othing in this section shall be construed to mean that any person shall be relieved of legal responsibility to support a child." K.S.A. 39-701 includes the following statement as a part of the express purposes of the act:

"It is not the policy of the state to discourage or interfere with the universally recognized moral obligations of kindred to provide, when possible, for the support of dependent relatives, but rather it is the policy of the state to assist the needy and where necessary, the relatives in providing the necessary assistance for dependents."

Applying the first prong of the rational basis test, it is clear to us that the statutes in question foster legitimate goals, *i.e.*, they foster and protect the universal duty of parents to support their children. Applying the second prong of the test, we must determine whether

the means chosen by the legislature bear a rational relationship to these legitimate goals. Mealey suggests that the recoupment statutes are overbroad, allow recoupment of expenses beyond those related to normal parental support, and otherwise are not related to any legitimate goal. Mealey argues that because of the financial burden placed on reintegrated families, the statutes actually serve to frustrate the stated legislative goal of assuring the care and custody of children in their own home, "as will best serve the [children's] welfare." See K.S.A. 38-1501.

In support of her argument in district court, Mealey cited a series of California authorities that were summarized as holding that "relative responsibility statutes have been invalidated when the government charges were not for support which the relative refused or failed to provide but for the cost of maintaining public institutions for public benefit." *In re Jerald C.*, 187 Cal. Rptr. 562, 564, 654 P.2d 745 (1982), *vacated by In re Jerald C.*, 36 Cal. 3d 1, 201 Cal. Rptr. 342, 678 P.2d 917 (1984). The State argues that these California authorities have been variously narrowed, moderated, or disapproved by the California Supreme Court in *County of San Mateo v. Dell J.*, 46 Cal. 3d 1236, 1252, 252 Cal. Rptr. 478, 762 P.2d 1202 (1988), where the court held:

"[F]undamental principles of equal protection preclude a statutory scheme for reimbursement of public assistance from requiring a class of responsible relatives (here the parents) to alone bear the costs of confinement, treatment, rehabilitation or supervision of a dependent (here the minor) whose custody is removed from the family, voluntarily or pursuant to court order, in whole or in part for the benefit and protection of society. In contrast, where a preexisting legal obligation of support of the dependent is established, there is no constitutional impediment to the state seeking reimbursement from the responsible family members of the reasonable costs of support and maintenance of such dependent for the duration of his placement outside the family home, where such uniform costs can be identified and segregated out from nonallowable costs, allocated amongst similarly situated dependents in a reasonable manner, and where the responsible relatives' liability is subject to reduction according to their reasonable ability to pay."

Other states have upheld similar statutes against such equal protection challenges. See, *e.g., Pandozy v. Murphy*, 222 App. Div. 2d 145, 646 N.Y.S.2d 400 (1996); *Dupes v. Dept. of Health & Rehab. Serv.*, 536 So. 2d 311 (Fla. App. 1988).

Pursuant to the Kansas statutes under attack here, recoupment from a parent or guardian is permissible only for "assistance expended on the child's behalf" and is restricted to assistance to the child of said parent, while such parent is not himself or herself receiving assistance, and during months only where the parent has not been obligated to pay support under court order. See K.S.A. 39-718b(b)(1), (2), and (3). In addition to these statutory restrictions, SRS has a written policy that authorizes seeking reimbursement from a parent only in foster care cases in the amount which that parent would have paid if there had been a child support order under the KCSG. We note, as did the district court, that this policy is consistent with K.S.A. 38-1563(j) and K.S.A. 38-1595, which seem to contemplate (without clear application to 38-1512) that the KCSG should control determinations of support under the Kansas Code for Care of Children. Given all of these restrictions, we are persuaded that the scheme for recoupment under these statutes bears a rational relationship to the valid legislative goals. Moreover, Mealey has cited no authority wherein similar legislation has been stricken as constitutionally infirm due to equal protection mandates.

Finally, we recognize that SRS's amended petition against Mealey sought an amount beyond its written policy. Mealey was successful *prior to remand*, however, in restricting the amount of recoupment, and her constitutional challenge before us cannot attack the statutes on this basis. Even if we were to have concern regarding SRS's overzealous efforts in seeking a "hypothetical" optimum recoupment or concern regarding the overbreadth of these recoupment statutes, Mealey now lacks standing to attack the statutes for overbreadth given her success to date in achieving a reimbursement order restricted to that amount commensurate with her obligations under the KCSG. Absent an injury specifically due to overbreadth, Mealey can not establish a concrete and particularized injury in fact to justify standing for such a challenge. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992); *Lower v. Board of Dir. of Haskell County Cemetery Dist.*, 274 Kan. 735, 747-60, 56 P.3d 235 (2002).

We understand that an order of recoupment against parents of reintegrated children may present such a financial burden to such families as to jeopardize the success of reintegration. The legislature has determined, however, that recoupment under these circumstances is appropriate; absent constitutional infirmity, it is not within our purview to express any opinion on legislative policy.

Affirmed.